IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LEONARD DOWDELL, | ) | CASE NO. 1:06 CV 404 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| WARDEN WILSON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## I.  Introduction

Before the Magistrate Judge by referral[1] is the *pro se* petition of Leonard Dowdell for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  Dowdell is currently incarcerated at

the Richland Correctional Institution serving a seven-year sentence for aggravated robbery,

kidnapping, and possession of a weapon while under disability.[3]

Dowdell, who was convicted at a 2003 bench trial in Cuyahoga County, now asserts

three grounds[4] for federal habeas relief:  (1) that his due process rights were violated when

the trial court permitted testimony as to his post-arrest silence; (2) that he received ineffective

assistance of counsel when his trial counsel failed to seek the suppression of the victim's

identification of him at a police "show-up;" and (3) that his conviction on both kidnapping

---

[1] ECF # 6.

[2] ECF # 1.

[3] *Id*.

[4] As will be discussed later, Dowdell also attempts to posit a fourth ground in his
traverse.

and aggravated robbery charges violated his constitutional protection against double jeopardy because the evidence did not show that any restraint was used beyond that required to commit the robbery and so the kidnapping count should have merged with the aggravated robbery count.[5]

The state initially responds that Dowdell's first ground for federal habeas relief should be dismissed as procedurally defaulted because: (1) Dowdell did not object at trial to the testimony relating his post-arrest silence,[6] (2) the state appeals court relied on that failure to deny this claim on direct appeal,[7] (3) Ohio's contemporaneous objection rule is an adequate and independent state law ground by which the state may foreclose federal habeas review,[8] and (4) Dowdell cannot show either "cause and prejudice" or a "fundamental miscarriage of justice" such as would excuse the default.[9]

In addition, the state contends that the state appeals court decision rejecting Dowdell's second ground for relief – ineffective assistance of trial counsel – was not an unreasonable application of the clearly established federal law of *Strickland v. Washington*.[10]  Moreover, the state here maintains that the determination of the state court to deny Dowdell's third

---

[5] ECF # 1 at 9.

[6] ECF # 11 at 10-11.

[7] *Id*.

[8] *Id*. at 11-12.

[9] *Id.* at 12-13.

[10] *Id*. at 20-24, citing *Strickland v. Washington*, 466 U.S. 668 (1984).

claim – that the aggravated robbery and kidnapping charges should have merged – was also not an unreasonable application of clearly established federal law[11] in light of *Blockburger v. United States*.[12]

Dowdell has filed a traverse asserting that any procedural default arising from the lack of contemporaneous objection to testimony concerning his post-arrest silence should be here excused because the lack of an objection was due to counsel's ineffectiveness.[13] In addition, he argues that the trial court failed to apply the proper test in evaluating the admissibility of the victim's identification at the "show-up" and so the appeals court had no basis on which to deny Dowdell's second habeas claim that his counsel was ineffective in not challenging that identification.[14]  He further contends, based on Ohio law, that aggravated robbery and kidnapping are "allied offenses of similar import" that require merger.[15]

In addition, Dowdell raises for the first time in his traverse the claim that he is actually innocent of the crimes for which he was convicted.[16]  He frames this assertion as a separate, fourth ground for habeas relief and requests an evidentiary hearing.[17]

---

[11] *Id.* at 24-27.

[12] *Blockburger v. United States*, 284 U.S. 299 (1932).

[13] ECF #13 at 4-5.

[14] *Id.* at 6-8.

[15] *Id.* at 8-9.

[16] *Id*. at 9-12.

[17] *Id.*

As will be more fully developed below, the Magistrate Judge recommends finding that: (1) ground one – admissibility of testimony on Dowdell's post-arrest silence – is procedurally defaulted since the state appeals court initially found that Dowdell had not made a contemporaneous objection to this testimony at trial, as required, which requirement is an adequate and independent ground for foreclosing habeas review, and the subsequent state court "harmless error" analysis did not waive the state's reliance on the procedural default; (2) the decisions of the state appellate court concerning current habeas claims two and three – ineffective assistance of counsel and double jeopardy – were neither unreasonable applications of, nor contrary to, clearly established federal law and thus these claims should be denied; and (3) the purported ground four – actual innocence – is neither a distinct habeas claim nor does it have merit.

## II.  Facts

### A.    Trial

The salient facts, as found by the state appellate court, are straightforward:

In May, 2003, while walking down Lorain Avenue in Cleveland, Keith Novak and his father Edward were assaulted at gunpoint by two men.  One of the men, later identified as [Dowdell], put the gun to Keith Novak's head and demanded all his money, which amounted to approximately thirty-eight dollars.  [Dowdell] and his accomplice fled.  Keith and his father went to a relative's where Keith got a ride home.

On his way home, Keith Novak saw [Dowdell] in the same vicinity. Arriving home, Novak called the police and gave them [Dowdell's] location. Novak met the police at the location he had given them.  At the scene, Novak identified [Dowdell] as one of the two men who had accosted him and his father earlier.

-4-

[Dowdell] waived his right to a jury trial and the case proceeded to bench trial. *** [At the trial, Dowdell was convicted] on one count of aggravated robbery with a firearm specification (Count One) in violation of R.C. 2911.01, one count of kidnapping with a firearm specification (Count Three) in violation of R.C. 2905.01, and having a weapon while under disability (Count Five) in violation of 2923.13.[18]

At two later points in its decision, the state appeals court more fully stated the facts as to the commission of the crimes and the identification of Dowdell by the victim.  First, as to the details of the offense, the court stated:

Keith Novak described what happened the day he was robbed at gunpoint.  Novak, sixteen years old, testified that he and his father were walking to a cousin's house.  Novak stated that his father was intoxicated and carrying a bottle of wine. As they walked, a man approached his father and asked him for a drink.  That same man then pushed Novak and his father into a hallway where defendant was waiting.  In the hallway, Novak stated that the defendant put a gun to his head and told him, "[g]ive me your money and everything you have or you're going to die."  Novak testified that defendant was holding the gun "in his left hand" and that he was blocking the hallway with his right hand on the wall.[19]

Further, as to the identification of Dowdell by the victim, the appeals court noted:

Novak also recalled exactly what the defendant was wearing: "an orange over-pulled sweatshirt, *** [and] a Dallas Cowboys hat."  Novak was also able to describe the gun the defendant had: "It was black *** a medium-sized gun."  He was also close enough to the defendant to see the trigger of the gun and that the defendant had a "lazy eye."

When Novak was being driven home by his cousin, he testified that they drove through the same area where the robbery had occurred.  He described what he saw as follows:

---

[18] *State v. Dowdell*, No. 83829, 2004 WL 2306678, at *1 (Ohio App. 8 Dist. Oct. 14, 2004).  The state appeals court decision also appears at ECF # 11, Attachment 1 (the state court record) at 55-67.  Inasmuch as the state record is only available electronically, the Westlaw version is used here and a copy is provided to the District Court for its convenience.

[19] *Id.*, at *2.

Q:      Okay.  And when you drove by, what did you see?

A:      I seen that man and the guy that was with him ***.

Q:      How did you know it was that man?

A:      Because I seen the shirt and the hat and the way he looked. He – he was just really familiar and I couldn't forget that.

Q:      Couldn't forget what?

A:      The way he looked.

      When police responded to his call from home, Novak told them that he had been robbed at gunpoint by a man wearing an orange sweatshirt and a Dallas Cowboy cap.  Novak told the police where they could find the man. When Novak went back to where he saw the defendant, the police were already there and they asked him to identify the man sitting in the police car. Novak positively identified the defendant as the man who robbed him.[20]

As previously noted, Dowdell waived his right to a jury trial and so was tried at a bench trial.[21]  He was convicted of one count of aggravated robbery with a firearm specification, one count of kidnapping with a firearm specification, and one count of having a weapon while under disability.[22]  Dowdell was then sentenced to an aggregate term of seven years in prison upon conviction on all counts.[23]

--------

[20] *Id.*, at *3 (footnotes omitted).

[21] *Id.*, at *1.

[22] *Id.*  Before trial, the court nolled additional separate counts of aggravated robbery and kidnapping.

[23] ECF # 11, Attachment 1 at 7.

**B.      Direct appeal**

Represented by different counsel,[24] Dowdell filed a timely appeal, raising three

assignments of error:

1.      The trial court erred in permitting testimony of (sic) Defendant's
        post-arrest silence.

2.      Defendant was deprived of his right to effective assistance of counsel,
        in that counsel failed to file a motion to suppress the out-of-court
        identification of Defendant.

3.      The trial court erred in failing to merge the conviction for kidnapping
        with the conviction for aggravated robbery.[25]

The state responded in opposition[26] and, as noted, the state appeals court rejected all

of Dowdell's assignments of error, affirming the decisions of the trial court.[27]

Dowdell, *pro se*, thereupon timely sought leave from the Ohio Supreme Court to file

a discretionary appeal, setting forth three propositions of law:

1.      It is a violation of the Fifth Amendment to use a defendant's
        post-arrest, post-*Miranda* silence in the prosecution's case-in-chief
        against the defendant, and it is reversible error to do so regardless of
        whether counsel properly objected.

2.      Where counsel in a criminal case fails to challenge a "show-up"
        identification procedure with a pre-trial motion to suppress the resultant
        identification, he has violated essential duties to properly prepare for

---

[24] Dowdell was represented at trial by John Luskin (*see*, ECF # 11, Attachment 1
at 91) and on appeal by Russell Bensing (*id.* at 55).

[25] ECF # 11, Attachment 1 at 14.  Dowdell's full brief on appeal with attachments is
at 11-42.

[26] *Id.* at 43-54.

[27] *Id.* at 55-67; *see also Dowdell*, 2004 WL 2306678.

trial and defendant has been deprived of his right to the effective assistance of counsel guaranteed by the State and Federal Constitutions.

3.      Where a kidnapping is committed during another crime and the restraint of the victim is merely incidental to the underlying crime, there exists no separate animus and O.R.C. § 2941.25 requires the merger of the two offenses, and the failure to merge the offenses violates Double Jeopardy protection.[28]

The state waived its right to file a memorandum in response.[29] On February 16, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.[30] Dowdell did not seek a writ of certiorari from the United States Supreme Court nor has he sought any post-conviction relief in the Ohio courts.

## C.      Federal habeas petition

On February 22, 2006,[31] Dowdell, *pro se*, filed the present petition, asserting three grounds for relief:

1.      A defendant's right to Due Process of Law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution is seriously violated when the trial court permits testimony of defendant's post-arrest silence and it is reversible error even if counsel fails to object.

---

[28] *Id*. at 71.  Dowdell's complete brief to the Ohio Supreme Court, with attachment, is at 70-86.

[29] *Id*. at 87.

[30] *Id.* at 88.

[31] Although Dowdell filed for federal habeas relief more than one year after the Ohio Supreme Court denied him leave to appeal, the filing is within the one-year statutory limitations period as augmented by the time within which a petition for certiorari may be filed with the United States Supreme Court after the conclusion of direct appeals within the state courts, even if no such petition is actually filed.  *See*, *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006).

2.     The Sixth Amendment guarantee of effective assistance of counsel is violated where counsel fails to file a Motion to Suppress the Out-of-Court identification of Petitioner.

3.     Where the same conduct can be construed to constitute two or more allied offenses of similar import the defendant may be convicted of only one, and the failure to merge the offenses violates Double Jeopardy protection as contained in the Fifth Amendment to the United States Constitution.[32]

The state has responded by filing a return of writ.[33] Dowdell has filed a traverse to that return.[34] As noted, in that traverse he attempts to raise an entirely new fourth ground for relief:

4.     Petitioner is actually innocent of the offenses of aggravated robbery, kidnapping, [having a] weapon under disability, and the gun specification, and actual innocence relieves any default.[35]

The state has not responded to this attempt to raise a new, fourth claim.  The matter has been referred to the Magistrate Judge for a report and recommendation.[36]

---

[32] ECF # 1 at 9.

[33] ECF # 11.

[34] ECF # 13.  The traverse is here termed a "reply."

[35] *Id*. at 9.

[36] ECF # 6.

## III.   Analysis

**A.      Ground One – testimony as to Dowdell's post-arrest,  post-*Miranda* silence – is procedurally defaulted.**

*1.      Standard of review – procedural default*

The Sixth Circuit has stated the analytical framework for determining procedural

default to be as follows:

> A petitioner for a writ of habeas corpus must meet certain procedural
> requirements to permit review of his habeas claims by a federal court. The
> petitioner must first exhaust the remedies available in state courts by fairly
> presenting his federal claims to the state courts; unexhausted claims will not
> be reviewed by the federal court.  The exhaustion "requirement is satisfied
> when the highest court in the state in which the petitioner was convicted has
> been given a full and fair opportunity to rule on the petitioner's claims."  The
> federal court will not review claims that were not entertained by the state court
> either due to the petitioner's failure to raise those claims in the state court
> while state remedies were available *or* when the petitioner's failure to comply
> with a state procedural rule prevented the state court from reaching the merits
> of the claim.
>
> For noncompliance with a state procedural rule to serve as a bar to
> habeas review, the state procedure must satisfy the standards set forth in
> *Maupin v. Smith*.  First there must be a state procedure in place that the
> petitioner failed to follow.  Second, the state court must have actually decided
> the petitioner's claim on the ground of the state procedural default.  Third, the
> state procedural rule must be an "adequate and independent" state ground to
> preclude habeas review.  This inquiry generally will involve an examination
> of the legitimate state interests behind the procedural rule in light of the federal
> interest in considering federal claims.  A state procedural rule must be "firmly
> established and regularly followed" to constitute an adequate basis for
> foreclosing habeas review.  A state procedural rule is an independent ground
> when it does not rely on federal law.  If these three factors are satisfied, the
> petitioner can overcome the procedural default by "demonstrat[ing] cause for
> the default and actual prejudice as a result of the alleged violation of federal

law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[37]

**2.      *Dowdell procedurally defaulted on his claim in Ground One.***

The state asserts that the Ohio appellate court, after citing Dowdell's failure to make a contemporaneous objection at trial to the admission of testimony on his post-arrest silence, relied on that failure to follow Ohio's rule on contemporaneous objections to preclude review of the merits of Dowdell's claim on appeal.[38]  The state contends that by employing a "plain error" standard of review for this claim, the state appeals court enforced the procedural bar created by Dowdell's failure to make a contemporaneous objection to the use of his post-arrest, post-*Miranda* silence at trial and so did not address Dowdell's claim on its merits.[39]

In his traverse, Dowdell argues first that any procedural default was caused by the ineffective representation of his trial counsel and so should here be excused.[40]  In addition, he contends that the state appellate court's plain error analysis was incorrect because the reference to his post-*Miranda* silence was not for a proper limited purpose, such as impeaching trial testimony, and so should not be upheld.[41]

─────────────────

[37] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (emphasis in original, internal citations omitted).

[38] ECF # 11 at 10-11.

[39] *Id.* at 11.

[40] ECF # 13 at 3-5.

[41] *Id.* at 4.

The Magistrate Judge notes first that the state appeals court plainly stated that "*[b]ecause [Dowdell] did not object* [at trial] to the testimony about his post-arrest silence, we review the admission of that evidence under a plain error standard."[42]  In such a case, the Sixth Circuit is clear that a "plain error" or "manifest injustice" review by a state court of an otherwise procedurally defaulted claim does not constitute a waiver of the default.[43]

In addition, Ohio's contemporaneous objection rule – which Dowdell admits he did not comply with as to the testimony on his post-arrest silence[44] – has been held to be an "adequate and independent" state law ground by which federal habeas review may be foreclosed.[45]

Thus, as to the first three necessary elements of a procedural default first set forth in *Maupin*, the state has established that (1) Ohio's contemporaneous objection rule was not followed by Dowdell, (2) the state appeals court relied on that failure by performing only a "plain error" review of Dowdell's claim, and (3) Ohio's contemporaneous objection rule is an adequate and independent state law basis for foreclosing federal habeas review.  Thus, the Magistrate Judge recommends finding that Dowdell has procedurally defaulted on the first ground for relief asserted here.

---

[42] *Dowdell*, 2004 WL 2306678, at *1 (emphasis added).

[43] *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000) (state court's "plain error" review does not constitute waiver of state procedural rules); *Scott v. Mitchell*, 209 F.3d 854, 868 (6th Cir. 2000) (review by state court of procedurally defaulted claim for "manifest injustice" does not constitute waiver of the default).

[44] *See*, ECF # 13 at 3.

[45] *Scott*, 209 F.3d at 869.

-12-

3.     *Dowdell has not excused his procedural default.*

Dowdell cannot excuse this procedural default unless he establishes cause for the default and prejudice from a failure to address the underlying claim, or, despite the presence of an unexcused default, that a fundamental miscarriage of justice would occur if the constitutional violation were not corrected.[46]

Dowdell attempts to excuse the default by claiming that his trial counsel was responsible for the procedural default by failing to make a contemporaneous objection.[47] However, as the state argues, ineffective assistance of counsel may excuse a procedural default only when the ineffective assistance claim has itself been fairly presented to and exhausted in the state courts.[48]

Here, Dowdell never presented the Ohio courts with the argument that his trial counsel was ineffective for failing to make a contemporaneous objection to this testimony.[49] As such, he cannot now excuse his procedural default by asserting for the first time in his traverse that it was due to ineffective assistance of his trial counsel.  Therefore, the Magistrate Judge

---

[46] *Smith*, 463 F.3d at 431.

[47] ECF # 13 at 3-5.

[48] ECF # 11 at 12.  *See*, *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Lancaster v. Adams*, 324 F.3d 423, 437-38 (6th Cir. 2003).

[49] Dowdell's sole claim of ineffective assistance of counsel throughout his state appeals was specifically that counsel should have moved to suppress the identification of Dowdell by the victim at the "showup."  *See*, ECF # 11 at 14 (brief to appeals court), 71 (brief to Ohio Supreme Court).  That argument is presented here as ground two of this petition and will be addressed below.

-13-

recommends finding that Dowdell has not shown cause to excuse his procedural default on ground one.

### 4.    *Dowdell has not established the "actual innocence" exception to procedural default.*

In addition to attempting to show cause to excuse this default, Dowdell also seeks to invoke the "actual innocence" exception to the rule barring consideration of even an unexcused procedurally defaulted claim by a federal habeas court.[50]  Dowdell frames this argument as a separate fourth ground for habeas relief,[51] but it is more properly considered as an exception to the bar on federal consideration of habeas claims subject to unexcused procedural default.[52]

To avail himself of the "narrow exception" of actual innocence, Dowdell must show that, in light of new and reliable evidence not presented at trial, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.[53]  The *Schlup* Court specifically noted that, to be credible, a claim of actual innocence requires new and reliable evidence of innocence not presented at trial:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a

---

[50] ECF # 13 at 9-12.

[51] *Id*. at 9.

[52] *See*, *Dretke v. Haley*, 541 U.S. 386, 388 (2004).  Actual innocence is a "narrow exception" to the rule that federal habeas courts will not entertain a procedurally defaulted claim absent a showing of cause and prejudice to excuse the default.

[53] *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.[54]

Moreover, the Supreme Court has been equally clear that actual innocence means "factual innocence, not mere legal insufficiency."[55]

Here, Dowdell offers no new evidence of actual innocence to satisfy the test mandated by *Schlup*.  In fact, without citing any authority, Dowdell directly asserts that *Schlup* is "inapplicable" to him.[56]  Instead, he proposes that his claim of actual innocence should be evaluated under a different standard, which he describes as "a holistic judgment and review about (sic) all the evidence" admitted at trial.[57]  In essence, he contends that (1) if the identification of him by the victim had been suppressed, (2) if the testimony concerning his post-arrest silence had not been admitted, and (3) if he had been allowed by his counsel to testify in his own behalf, then he would have been found innocent.[58]

Given that the United States Supreme Court has clearly established the rules that: (1) the "narrow exception" of actual innocence requires, at the core, the presence of new evidence of innocence not presented at trial, and (2) actual innocence is not mere legal insufficiency of evidence, and given further that Dowdell has here: (1) not offered any such new evidence but (2) merely argued that, absent the evidence complained of, the case against

---

[54] *Id*. at 316.

[55] *Bousley v. United States*, 523 U.S. 614, 623 (1998).

[56] ECF # 13 at 12.

[57] *Id.* at 11.

[58] *Id.* at 12.

him at trial would have been legally insufficient to convict him, the Magistrate Judge recommends finding that he has not met the standard for establishing actual innocence.

In sum, the Magistrate Judge recommends finding that Dowdell:  (1) has procedurally defaulted his first ground for habeas relief, (2) has not excused that default for cause, and (3) has not established the "actual innocence" exception to federal non-consideration of a defaulted claim.   Thus, the Magistrate Judge further recommends that ground one be dismissed.

Alternatively, should the District Court wish to consider the merits of this claim, an analysis on that basis will be presented under the next section.[59]

**B.**	**The decision by the state appeals court as to (a) ground two – ineffective assistance of counsel for not moving to suppress the "show-up" identification, (b) ground three – failure to merge criminal counts, and, alternatively, (c) ground one – allowance of testimony as to post-arrest silence, were not unreasonable applications of, nor contrary to, clearly established federal law.**

*1.*	*Standard of review – state decisions as "unreasonable applications of" or "contrary to" clearly established federal law.*

28 U.S.C. § 2254(d)(1) provides that, with respect to any claim that was adjudicated on the merits in state courts, the writ shall not issue unless that state adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on

---

[59] The alternative analysis of ground one on the merits is at section III.B.2. herein.

a question of law or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts.[60]  The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."[61] Where, despite having the matter presented as a federal claim, the state court did not use federal constitutional law to decide the issue in question, the federal habeas court must determine if that decision is "contrary to" clearly established federal law.[62]

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principles from the decisions of the Unites States Supreme Court but unreasonably applies those principles to the claim at issue.[63] The proper analysis for this clause is whether the state court decision was "objectively unreasonable" and not merely erroneous or incorrect.[64]

---

[60] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[61] *Id.* at 405.

[62] *Alley v. Bell*, 307 F.3d 380, 397-98 (6th Cir. 2002).

[63] *Williams*, 529 U.S. at 407-08.

[64] *Id*. at 409-11.

2. ***If not procedurally defaulted, the state court decision rejecting Dowdell's first ground for relief – use of his post-arrest silence – was not contrary to the clearly established federal law of Doyle v. Ohio[65] and Brecht v. Abrahamson.[66]***

As noted, the state appeals court here initially observed that, because Dowdell had not made a contemporaneous objection to the testimony about his post-arrest silence, the court could only employ a plain error standard in evaluating his claim.[67]  As such, the appellate court, relying on state law that erroneous admission of evidence is harmless where the remaining evidence of guilt is overwhelming, determined that the testimony here was "an isolated remark" since the state did not use Dowdell's silence as proof of guilt or even mention it again during the trial.[68]  Thus, given that there was "an independent and substantive basis" to support the guilty verdict, any error was harmless.[69]

The incident complained of by Dowdell was related by the state court as follows:

Q:      [By prosecutor to Detective Torok] Okay. Did you have occasion to come in contact with [Defendant]?

A:      Yes.

Q:      And would you tell the Court about that?

A:      The arrested male, Leonard Dowdell, was being housed at the Fifth District.  I went there and asked to see if I could see the prisoner.  They brought the prisoner out to me.

---

[65] *Doyle v. Ohio*, 426 U.S. 610 (1976).

[66] *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

[67] *Dowdell*, 2004 WL 2306678, at *1.

[68] *Id.*, at **2-3.

[69] *Id.*, at *3.

-18-

> First thing I did was I advised Mr. Dowdell, who I was, and I advised
> him of his constitutional rights and I made sure that he understood
> them.  He said that he did.  I then proceeded to ask him if he would like
> to talk to, you know, talk to me. And he said: "Well, there's not much
> I got to say to you.  I'll say what I got to say in court."
>
> I says:  "That's fine."  I says:  "I understand, then, you don't want to
> talk to me."  He says:  "No."[70]

In *Doyle v. Ohio*, the United States Supreme Court held that because a Miranda warning of the right to remain silent implies that such silence would not later be used against a defendant, prosecutors may not refer to that silence at trial to infer guilt.[71]  While a limited exception has been recognized that permits reference to post-*Miranda* silence in cases of prior inconsistent statements by a defendant,[72] the general rule is that the state may not make use of a defendant's post-*Miranda* silence during trial.

However, as the Supreme Court held in *Brecht v. Abrahamson*, even if a *Doyle* violation is established, a federal habeas court may not grant the writ unless it is also shown that the violation had "a substantial and injurious effect or influence in determining the jury's verdict."[73]

Here, although the state appeals court resolved the claim as a matter of state law after giving effect to the procedural default, it engaged in precisely the sort of analysis that would

---

[70] *Id.*, at *2.

[71] *Doyle*, 426 U.S. at 619.

[72] *See*, *Anderson v. Charles*, 447 U.S. 404, 408 (1980).

[73] *Brecht*, 507 U.S. at 637.

be required by *Brecht*.  It noted that the brief statement on Dowdell's silence did not stand alone, but came in the context of a narrative by the police detective as to how he conducted the entire investigation.  Moreover, that statement was never used to construct or suggest any kind of argument that the silence implied guilt.  In fact, the comment by the detective was never referred to again by the prosecutor.  In addition, there was substantial evidence of guilt apart from any inference that could conceivably be drawn from Dowdell's post-*Miranda* silence.  It should further be noted here that because this was a bench trial, there is no need to consider even the remote possibility that an unsophisticated juror might draw impermissible inferences of guilt from this remark within this context.

Accordingly, the Magistrate Judge recommends finding that the state appeals court decision that any *Doyle* error here was harmless was not contrary to clearly established federal law.  Thus, the Magistrate Judge further recommends, as an alternative to the previous recommendation that this claim be dismissed as  procedurally defaulted, that this claim be denied.

**3.    *The state appeals court decision that Dowdell's trial counsel was not constitutionally ineffective in not moving to suppress the "show-up" identification was not contrary to the clearly established federal law of Strickland v. Washington.***

In addressing Dowdell's claim that he was denied effective representation of counsel when his trial counsel failed to move for suppression of the identification obtained at a "show-up" or "cold stand" with the victim, the state appeals court first analyzed the reliability of the show-up identification in this case pursuant to a state law standard[74] that is

---

[74] *Dowdell*, 2004 WL 2306678, at *4.

identical to that prescribed by the United States Supreme Court in *Neil v. Biggers*.[75] After concluding that the show-up in this case was reliable according to the relevant standard, the appeals court determined, without citing to any federal law, that any claim of ineffective representation based on a failure to move to suppress that identification was moot.[76]

The governing standard by which a federal habeas court is to assess claims of ineffective assistance of counsel was articulated by the United States Supreme Court in *Strickland* as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are unreliable. Unless the defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown of the adversary process that renders the result unreliable.[77]

Because both prongs of the *Strickland* test must be met to warrant the grant of the writ, courts are not required to conduct an analysis under both prongs if there is no proof as to one of them.[78]

With respect to the first, or "deficiency," aspect of the standard, *Strickland* stresses that the reviewing court must be "highly deferential" toward counsel.[79]  Courts need to

---

[75] *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

[76] *Dowdell*, 2004 WL 2306678, at *4.

[77] *Strickland*, 466 U.S. at 687.

[78] *See*, *id.*, at 697.

[79] *Id.* at 689.

"recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[80]

With respect to the second, or "prejudice," prong of the *Strickland* test, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[81]

Here, Dowdell's claim of ineffective assistance of counsel is based solely on the assertion that his trial counsel should have moved to suppress the identification made by the victim at a "cold stand" or "show-up" conducted by police within hours of the crime. As the state court noted, this ineffective assistance of counsel claim rests in large part on whether or not the cold stand identification, where Dowdell was the only suspect shown to the witness, was impermissibly suggestive and non-reliable.

Essentially, federal law holds that a defendant's right to due process is violated where the identification process was so unnecessarily suggestive as to run the risk of irreparable mistaken identity.[82] The analysis of impermissibly suggestive identification requires that courts first determine if the identification was unnecessarily suggestive and then decide if such identification was nevertheless reliable.[83] As to whether the identification was unduly

---

[80] *Id*. at 690.

[81] *Id.* at 694.

[82] *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005) (citing *Biggers*, 409 U.S. at 198).

[83] *Id.*

-22-

suggestive, the court must look to the effects of the circumstances under which the identification was conducted, not to whether law enforcement officers intended to prejudice the defendant.[84]

If this element is established, the court proceeds to consider whether, under the totality of the circumstances, the identification was nevertheless reliable.[85]  In judging reliability, *Biggers* set forth the following factors to be considered:  (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.[86]

Here, the state appellate court appears to have assumed, without deciding, that the cold stand identification where only Dowdell was presented to the witness was unduly suggestive.  Inasmuch as the witness's attention in this instance was solely on Dowdell, it seems as if this cold stand was, by definition, unduly suggestive under the first prong of the controlling standard.[87]

_____

[84] *Id.* at 470. Inquiry into the "effect of the circumstances" means asking if the witness's "attention [was directed] to a suspect because of police conduct."

[85] *Id.* at 469.

[86] *Id.* at 472 (citing *Biggers*, 409 U.S. at 199-200).

[87] *See*, *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977) (an identification where the witness views only one subject is unduly suggestive).

However, the court then, under the rubric of Ohio law, took the next step in the analysis required by federal law and applied the identical five *Biggers* factors to this identification.  In doing so, it concluded that, despite being suggestive, the identification of Dowdell at the show-up was nevertheless reliable.

Specifically, it observed:  (1) that Novak, the victim, had sufficient opportunity to view Dowdell at the time the crime was permitted; (2) that he was paying close attention at that time, such that he could describe Dowdell's clothing, his "lazy eye," and the gun; (3) that Novak's prior description of Dowdell to police was totally consistent with how Dowdell appeared at the cold stand; (4) that Novak was certain of his identification.[88]  In addition, the fact that it was Novak who directed police to Dowdell – not the other way around – was "most significant" to the Ohio court.[89]

Accordingly, upon review the Magistrate Judge recommends finding that the state court here did not act contrary to the clearly established federal law of *Biggers* in determining that the cold stand identification of Dowdell was reliable.

Thus, in the context of the first prong of *Strickland* – whether counsel's performance was constitutionally deficient – the Magistrate Judge recommends finding that the state court decision here was not an unreasonable application of *Strickland.*  While it may have been more correct for the state court to have said that, on this record, Dowdell did not establish

---

[88] *Dowdell*, 2004 WL 2306678, at *4.

[89] *Id.* Although not specifically addressed by the Ohio court, the fifth *Biggers* factor – the length of time between the witness's initial observation of the defendant and subsequent identification – was here also suggestive of reliability in that the cold stand identification occurred within hours of the crime.

that his counsel was ineffective, rather than that the ineffectiveness claim was "moot," the fact remains that one can hardly posit a claim of ineffectiveness on counsel's failure to seek the suppression of constitutionally reliable identification.  Even granting that the reliability of the identification could not have been definitively known without a court ruling, a decision by trial counsel to abstain from making a motion that was likely viewed as being without merit is the sort of tactical decision that is presumed to be correct.[90]

Therefore, the Magistrate Judge recommends finding that the state court decision with respect to Dowdell's claim of ineffective assistance of counsel was not contrary to the clearly established federal law of *Strickland*.  Thus, the Magistrate Judge further recommends that ground two of the present petition be dismissed.

**4.      *The state court's denial of Dowdell's third ground for relief – that his conviction on kidnapping and aggravated robbery charges violated his protection against double jeopardy – was not an unreasonable application of the clearly established federal law of Blockburger v. United States.*[91]**

Dowdell claims, arguing on the basis of two decisions of the Ohio Supreme Court construing Ohio law,[92] that kidnapping is essentially a lesser included offense to the crime of aggravated robbery since "[i]mplicit within every robbery (and aggravated robbery) there is kidnapping," and thus there can be no separate offense without showing a separate *animus*

---

[90] *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).

[91] *Blockburger*, 284 U.S. 299 (1932).

[92] *State v. Logan*, 60 Ohio St. 2d 126 (1979); *State v. Fears*, 86 Ohio St. 3d 329 (1999).

for the kidnapping.[93]  He, therefore, contends that the trial court denied him the protection of the double jeopardy clause by not merging the kidnapping and aggravated robbery counts of his indictment.

The Magistrate Judge observes initially that Dowdell never presented this claim as a federal constitutional claim to the Ohio appeals court.  An examination of his state appellate brief discloses that he framed this issue purely as one of state law.[94]  However, the record is also clear that the state appeals court decided the matter by reference to a decision of the Ohio Supreme Court that is explicitly based on the clearly established federal law of *Blockburger*.[95]

Accordingly, while there may be some question as to whether Dowdell, on the face of his brief, fairly presented this claim to the Ohio courts as a federal constitutional issue,[96] the Magistrate Judge suggests that because the state court adjudicated it with a direct reference to the applicable federal law as adopted by the Ohio Supreme Court should satisfy

_____

[93] ECF # 13 at 8-9 (quoting *Fears*, 86 Ohio St. 3d at 151).

[94] *See*, ECF # 11 at 22-24 (Dowdell's state appellate brief, framing the argument as one of state law and citing only Ohio cases construing a specific Ohio statute).

[95] *Dowdell*, 2004 WL 2306678, at **4-5.  The state court here relied on *State v. Rance*, 85 Ohio St. 3d 632 (1999), an Ohio Supreme Court decision which appears to define Ohio's merger doctrine without reference to separate animus, but solely as a question of whether, pursuant to the federal law in *Blockburger*, the statutory elements of the two offenses, based exclusively "on the wording of the statutes alone," mean that proof of one offense will necessarily require proof of the other.  *Id*. at 637.

[96] *See*, *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (listing the ways by which a claim is deemed fairly presented to the state courts); *see also*, *Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (claim is fairly presented when it is the "same claim under the same theory").

the underlying concern behind requiring fair presentment[97] and permit the federal habeas court to review the state decision under the "unreasonable application" prong of *Williams*.[98]

As first formulated in *Blockburger v. United States*,[99] the clearly established federal law as to double jeopardy provides that, in the case of multiple offenses, if one offense contains an element not contained in the other, then they are not the "same offense," and double jeopardy would not bar prosecution for both crimes.[100]  As noted, this is the same test adopted by the Ohio Supreme Court in *Rance*[101] and employed by the state appeals court in this case.[102]

As the state court noted, in Ohio "[a]ggravated robbery requires proof that defendant brandished a deadly weapon to facilitate a theft offense [while] kidnapping requires proof that defendant restrained Novak's liberty."[103]  Thus, because each offense  here requires

---

[97] *See*, *O'Sullivan v. Boerkel*, 526 U.S. 838, 844-45 (1999) (because state courts, like federal courts, enforce the federal constitution, comity requires that they be afforded a fair opportunity to address and remedy federal constitutional claims before those claims are presented to federal courts).

[98] *Williams*, 529 U.S. at 413.

[99] *Blockburger*, 284 U.S. at 304.

[100] *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Palazzolo v. Gorcyca*, 244 F.3d 512, 519 (6th Cir. 2001).

[101] *Rance*, 85 Ohio St. 3d at 637.

[102] *Dowdell*, 2004 WL 2306678, at *4.

[103] *Id.*, at *5.

proof of an element not included in the other, the Ohio appeals court concluded that there was no double jeopardy involved in prosecuting Dowdell for both crimes.[104]

Inasmuch as the state court is presumed to correctly interpret state law as to the elements of crimes defined therein,[105] and further since this decision was based upon the correct principles of clearly established federal law concerning double jeopardy, the Magistrate Judge recommends finding that the conclusion of the state court on this claim was not an unreasonable application of that law.  Accordingly, the Magistrate Judge further recommends that this ground for relief be denied.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that this petition be dismissed as to Ground One and denied as to Grounds Two and Three.


Dated:  April 4, 2007                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[106]

---

[104] *Id.*

[105] *See*, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

[106] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).